**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| STACEY I. MILLER, individually and on behalf of others similarly situated, | ) ) **CLASS ACTION COMPLAINT** ) |
| Plaintiff | ) ) **FLSA COLLECTIVE ACTION** ) **COMPLAINT UNDER** ) **29 USC § 216(b)** ) |
| vs. | ) CASE NO.  3:22-CV-1575 ) |
| SCOTT SILVERTHORNE, SILVERTHORNE CHEVROLET, INC., and SILVERTHORNE AUTO GROUP, INC., | ) ) ) ) ) |
| Defendants | ) ) |

***PLAINTIFF'S CLASS ACTION AND FLSA COLLECTIVE ACTION COMPLAINT FOR DAMAGES***

*I.  INTRODUCTION*

Plaintiff Stacey I. Miller ("Miller") is a former employee of Defendants Scott Silverthorne, Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. (hereinafter collectively "Silverthorne").[1] Miller worked for Silverthorne from approximately September 2020 until the date of her wrongful termination in late October 2021.

In this action, Miller is pursuing class action and collective action claims[2] against Silverthorne to address class-wide overtime violations committed by Silverthorne against Miller and all of its other hourly paid employees who were also paid earned wages in the form of a commission

---

[1] Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. are jointly operated and controlled by Scott Silverthorne. The two companies are a joint employer under the law.

[2] Miller attaches a copy of her Consent to Join FLSA Collective Action as Exhibit 1.

1

or bonus paid in addition to hourly wages. Miller will serve as the representative plaintiff in the Rule 23 class action and FLSA collective action.

Specifically, Silverthorne is and has been underpaying overtime compensation to its hourly-paid employees on a systematic, class-wide basis as a result of an unlawful practice by which Silverthorne is failing to include all of its employees' earned wages in its calculation of employees' regular rates of pay and, in so doing, is failing to include all earned wages in its calculation of its employees' overtime rate of pay. All hourly-paid employees who earned wages one or more times in the last three years in the form of a commission/earned bonus were and are being similarly subjected to Silverthorne's unlawful compensation scheme, which violates both the Illinois Minimum Wage Law and the FLSA.

To explain generally, Miller and a significant number of similarly situated Silverthorne employees regularly earned a portion of their wages through earned commission or bonus payments. These commission/bonus payments are earned wages paid on a regular basis. The commission/bonus payments are promised beforehand, expected and are in no way gratuitous or discretionary. Silverthorne is paying overtime compensation to these same hourly paid employees, but it is not including in the regular rate of pay the wages it pays as a commission or bonus. In so doing, Silverthorne is not paying overtime wages at the full overtime rate of pay. This class-wide and systematic failure and refusal to include the commission/bonus payments in the calculation of hourly employees' regular rates of pay violates the Fair Labor Standards Act ("FLSA") and the Illinois Minimum Wage Law and results in class-wide underpayment of overtime compensation.

Miller's class and collective action claims based upon Silverthorne's failure to include commission/bonus payments in the calculation of regular rates of pay and overtime rates of pay will

be perfect for collective action treatment and will be easy to prove. All of Silverthorne's overtime violations should be shown on the face of pay stubs and pay roll records Silverthorne kept on its hourly paid employees.

## II. FACTUAL ALLEGATIONS

1. Miller is a resident of the State of Illinois and is domiciled in Oblong, Crawford County, Illinois.

2. Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are separately incorporated, however, the two businesses are operated jointly by Defendant Scott Silverthorne and exist as a "joint employer" as that term has been defined by the Courts and the FLSA itself. To provide examples, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. have the same primary owner and operator, Defendant Scott Silverthorne. Similarly, Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. are managed by the same General Manager, Ron Murfee. Plaintiff Stacey Miller herself worked for both Defendant Silverthorne Chevrolet, Inc. and Defendant Silverthorne Auto Group, Inc. and, in fact, was transferred from Silverthorne Chevrolet, Inc. to Silverthorne Auto Group, Inc. in approximately July 2021. Her pay at the two dealerships was the same. Each employer exercised total control over Ms. Miller's employment. Each (1) had the power to hire and fire Ms. Miller, (2) each supervised and controlled Ms. Miller's work schedule and conditions of employment, (3) each equally determined the rate and method of payment of Ms. Miller's wages, and (4) each equally maintained employment records for Ms. Miller. This was particularly true as both Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. were being run by the same owner, Defendant Scott Silverthorne, and same general manager on a day

to day basis.

3.     Silverthorne hired Miller to work as Service Advisor in the Service Department at the Silverthorne Chevrolet dealership.  Silverthorne transferred Miller to the Silverthorne Auto Group location in approximately July 2021 and assigned Miller to work as the company's Business Development person.  Silverthorne wrongfully terminated Miller's employment in late October 2021.  During her entire period of employment with Silverthorne, Miller did good work and met all of Silverthorne's reasonable expectations.

4.     At all times during her employment with Silverthorne, Miller was paid wages primarily on an hourly basis and treated as a non-exempt employee.

5.     Silverthorne is headquartered in and has its principal place of business in Robinson, Crawford County, Illinois.  Based upon available information, Silverthorne appears to employ all of its hourly paid workers in the State of Illinois.

6.     Throughout her employment with Silverthorne, Miller was a non-exempt employee who was compensated by Silverthorne on an hourly-paid basis.  At the time of her termination, Miller's base rate of pay was $14.00 per hour. During her employment with Silverthorne, Miller regularly worked significant overtime hours (in excess of forty hours in a seven day work week).

7.     In many of the work weeks Silverthorne paid Miller overtime compensation, Silverthorne failed to include other earned commission/bonus wages in Miller's regular rate of pay and, in so doing, failed to include those categories of wages in the calculation of Miller's overtime rates of pay.  This resulted in Silverthorne's failure to pay Miller her overtime wages at her full overtime rate of pay.

8. Silverthorne's failure to include earned commission/bonus wages in Miller and all of her similarly situated coworkers' regular rates of pay, resulted in the underpayment of Miller and her similarly situated coworkers' overtime compensation in corresponding weeks, causing systematic and class-wide violations of the FLSA and the Illinois Minimum Wage Law.

9. Throughout her employment with Silverthorne, Miller and a significant number of employees who were primarily hourly-paid and non-exempt, were paid an additional amount as an earned commission/bonus. For Miller, she earned this commission bonus as a service advisor and as a business developer. Categories of hourly employees also paid an earned commission/bonus included, but are not limited to, service advisors, service and maintenance technicians, marketers, and business developers. During many of the work weeks covered by the commission/bonus payments, Miller worked significant overtime hours (hours in excess of forty (40) in the work week. These earned commission/bonus wages were a smaller, lesser component of Miller's compensation.

10. Silverthorne did not include Miller's earned commission/bonus wages in its computation of Miller's overtime wages. This same failure was true for every other Silverthorne hourly paid employee paid these earned commission/bonus wages. Specifically, Silverthorne did not include Miller's earned commission/bonus wages in its calculation of her regular rate of pay before calculating her overtime rate of compensation in weeks in which Miller worked more than forty (40) hours, was owed overtime compensation and was also paid the earned commission/bonus wages.

11. As a specific example, Miller worked overtime (working at least 8.71 overtime hours) and earned overtime compensation of at least $182.91 in the two week pay period ending

April 16, 2021. During that same pay period, Miller was also paid an earned commission/bonus for the month totaling an additional $1,200.00. That $1,200.00 amount was not factored into the overtime weeks Miller worked in April 2021, nor was it reconciled and factored into the overtime work weeks in March 2021. At no point was this earned commission/bonus wage factored into Miller's regular rate of pay for any work week or work weeks in any month and it was never factored into the calculation of Miller's overtime rate of pay in any work week or work weeks. Silverthorne underpaid overtime wages by failing to factor the $1,200.00 earned commission/bonus into the regular rate of pay in the example cited in this paragraph.

12. In the same manner described for Miller, Silverthorne failed to include in the regular rate or pay corresponding overtime to all other employees who similarly worked overtime and were paid earned commissions/bonuses that covered the same pay periods (that also included overtime). This has resulted in significant underpayment of overtime to Miller and her similarly situated coworkers over many years, including the last three years.

13. Silverthorne has created a policy and practice whereby it significantly underpays its non-exempt, hourly paid employees overtime compensation by failing to properly include earned commissions/bonuses in regular rates of pay and by failing to properly calculate overtime hours and overtime rates of pay required by the FLSA and the Illinois Minimum Wage Law.

14. Based upon its long-standing policy and practice of improperly calculating overtime compensation, Silverthorne has been systematically underpaying its non-exempt, hourly paid employees significant sums of overtime wages on a weekly basis. The aggregate sum of unpaid overtime for all hourly Silverthorne employees is very substantial on a weekly and on an annual basis.

15. Based upon information and belief, particularly when including employee turnover, Miller estimates that Silverthorne applied its unlawful method of calculating and paying employees for overtime hours of work in a manner that affects more than fifty and up to one hundred employees over a three year period.

16. Silverthorne has intentionally, knowingly, with reckless disregard and systematically violated Miller and her similarly situated Silverthorne coworkers' rights to earned overtime through Silverthorne's unlawful overtime calculation and payment policies.

### III.   CLASS AND COLLECTIVE ACTION ALLEGATIONS

17. Miller incorporates herein by reference paragraphs 1 - 16 above.

18. This Complaint is brought as a collective action under the FLSA and as a class action under the Illinois Minimum Wage Law on behalf of Miller and other current and former Silverthorne hourly-paid workers who were similarly denied payment of wages and overtime compensation under Silverthorne's compensation scheme that involved the improper calculation of regular rates of pay needed to properly calculate overtime rates of pay (which resulted in the underpayment of overtime compensation).

19. This action is filed as a collective action pursuant to Section 16(b) of the Fair Labor Standards Act, 29 USC § 216(b), on behalf of Miller and all Silverthorne current and former hourly-paid employees who were damaged by Silverthorne's compensation system which required and resulted in unpaid or underpaid overtime work.  By virtue of the "collective action," Miller represents the identical and/or similar interests of former and current hourly-paid employees denied full overtime compensation under the same circumstance. Miller anticipates that other Silverthorne employees and former employees will opt in to the action.

20.     With respect to FRCP 23(b)(3) class action claims, Miller will serve as class representative over the following class:

> Miller serve as class representatives for the class-wide claims brought under the Illinois Minimum Wage Law. This Court has supplemental jurisdiction over Plaintiff's Illinois statutory wage claims.  This action is filed as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of Miller and on behalf of all eligible Silverthorne current and former hourly-paid employees who were damaged by Silverthorne's compensation system which failed to properly pay full overtime as Silverthorne failed to include earned commission/bonus wages in the calculation of regular rates of pay for purposes of paying overtime compensation. By virtue of the class action, Miller represents the identical and/or similar interests of former and current coworkers denied overtime compensation under the same circumstances.

21.     The number of Silverthorne's current and former employees who will be members of this collective action/class action is so great (numerosity) that joinder of all members is impractical.  Instead, Plaintiff will pursue discovery to obtain the names of the other current and former Silverthorne employees, to provide notice of the collective action, and to offer the opt-in opportunity, and to provide notice of the class action and to offer the opt-out opportunity.

22.     Particularly with the types of wage claims and practices at issue in this case, there are questions of law and fact that are common to the entire collective group/class.

23.     Miller's claims are typical of the claims of the whole class and collective group of current and former hourly-paid employees harmed by Silverthorne's illegal wage practices.

24.     Miller will act to fairly and adequately protect the interests of the entire class and collective group of current and former Silverthorne employees.

25.     A "combined"[3] collective action/class action is superior to other available means for the fair and efficient prosecution of these wage claims against Silverthorne. For example, to

---

[3] See *Ervin v. OS Restaurant Services, Inc.*, 632 F.3d 971, 973-974 (7th Cir. 2011)

prove Silverthorne's illegal wage practices, Miller and other members of this collective group/class would seek in discovery records about all similarly situated current and former Silverthorne employees who were similarly denied earned overtime compensation under Silverthorne's illegal wage practices, all of which harmed hourly-paid employees. Individual lawsuits by the members of the collective group/class could lead to 1) inconsistent or varying outcomes in the cases, 2) duplicitous discovery, or 3) competition for limited funds. Further, as a practical matter, the first litigant to trial may achieve a result which would have bearing on all of the other individuals in the group.

26. A determination regarding the "similarness" of those able to participate in the collective action/class action would also allow litigation of claims that may not otherwise be cost effective, depending upon the amount of each individual group member's damages. Particularly with the type of FLSA and Illinois statutory wage violations at issue in this litigation, some, if not most, of the individual group members may not be aware of their rights to their wages under the FLSA and Illinois law, or may not, because of financial means or experience, be in a position to seek the assistance of counsel to commence individual litigation.

27. A combined collective action/class action will result in an orderly and expeditious administration of the group members' claims, and economies of time, court resources, effort and expense, and uniformity of decisions will be assured.

28. Because Silverthorne's compensation system which required and resulted in uncompensated overtime by hourly-paid employees results in wage violations that trigger issues of both federal and state law, this cause of action presents the ideal factual scenario supporting the Court's exercise over the supplemental state law claims, as common state and federal law

issues predominate.

## IV. JURISDICTION AND VENUE

29. This Court has jurisdiction over Miller's FLSA claims under 28 USC § 1331 as those FLSA claims raise questions of federal law. See 29 USC § 201 et seq. Additionally, this Court has supplemental jurisdiction over Miller's Illinois Minimum Wage Law claim, as though claims share a common basis of fact with Miller's FLSA claims. 28 USC § 1367.

30. This Court is the appropriate venue for this cause of action as Miller worked for Silverthorne in Crawford County, Illinois and most or all of the illegal activity took place in the Southern District of Illinois. 28 USC § 1391.

## V. STATEMENT OF CLAIMS

### A. Fair Labor Standards Act Claims

31. Miller incorporates herein by reference paragraphs 1 through 30 above.

32. At all relevant times, Miller was an individual employee within the meaning of the FLSA, 29 U.S.C. § 203(e)(1).

33. Silverthorne Chevrolet, Inc. is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Silverthorne Chevrolet, Inc. is a "person" as that term is defined under the FLSA.

34. Silverthorne Auto Group, Inc. is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Silverthorne Auto Group, Inc. is a "person" as that term is defined under the FLSA.

35. Scott Silverthorne is an owner, officer and/or shareholder of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. Silverthorne exercised operational control over

Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc.; controlled significant business functions of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc.; and acted on behalf of and in the interest of Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. in devising, directing, implementing, and supervising the wage and hour practices and policies challenged in this Complaint. Scott Silverthorne is an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d). Scott Silverthorne is a "person" as that term is defined under the FLSA.

36. At all relevant times, Miller was engaged in interstate commerce as defined by the FLSA, 29 U.S.C. § 207.

37. At all relevant times, Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc. have been enterprises within the meaning of Section 3(r) of the FLSA, 29 U.S.C. §203(r).

38. At all relevant times, Silverthorne Chevrolet, Inc. has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

39. At all relevant times, Silverthorne Auto Group, Inc. has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. §203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or

otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that the enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000.

40. Silverthorne, jointly and severally, violated Miller rights and the right of every similarly situated coworker to be properly paid full overtime wages in a manner required by the FLSA.

41. Silverthorne has repeatedly violated the FLSA's overtime provisions by not paying Miller and members of the Plaintiff Class at the full, required overtime compensation rate for all hours worked over 40 in a work week.

42. Silverthorne's failure to comply with the FLSA's provisions regarding overtime compensation is willful and without justification, and subjects Silverthorne to a three year statute of limitations.

43. Miller and the Plaintiff Class seek all available damages, including unpaid wages, unpaid overtime compensation, liquidated damages, payment of reasonable attorney's fees, costs and expenses, and any and all other damages to which they may be entitled for Silverthorne's violations of their rights under the Fair Labor Standards Act.

### B. Class Action Claims Under Illinois Minimum Wage Law

44. Miller incorporates herein by reference paragraphs 1 through 43 above.

45. Silverthorne is subject to and covered by the provisions of the Illinois Minimum Wage Law.

46. Silverthorne is an "employer," as that term is defined by the Illinois Minimum Wage Law. Defendants Scott Silverthorne, Silverthorne Chevrolet, Inc. and Silverthorne Auto

Group, Inc. are a joint employer under the Illinois Minimum Wage Law and all are jointly and severally liable to Miller and all putative class members for class-wide violations of the Illinois Minimum Wage Law.

47. Miller and all putative class members are "employees" as the term is defined by the Illinois Minimum Wage Law and all are protected by the provisions of the Illinois Minimum Wage Law.

48. Silverthorne committed overtime violations under the Illinois Minimum Wage Law against Miller and all similarly situated hourly paid workers, as earned, regularly paid commision/bonus wages that were earned should have been included in employees' regular rates of pay and included in any calculation of overtime compensation due to Miller and each and every similarly situated class member in each and every week in which both overtime compensation and commission/bonus wages were owed or paid.

49. Because it failed to include earned commission/bonus wages in its calculation of overtime compensation, Silverthorne failed to pay Miller and each and every similarly situated coworker at the full and correct overtime rate of pay, as required by the Illinois Minimum Wage Law in any and all calendar weeks in which Miller and/or every similarly situated coworker worked in excess of forty (40) hours.

50. Additionally, Danisco has repeatedly violated the FLSA's overtime provisions by failing to pay Gray and each similarly situated coworker at full overtime rates of pay for every overtime hour worked.

51. Pursuant to 820 ILCS 105/12(a), Miller and all putative class members are entitled to recover all unpaid overtime wages, treble the amount of unpaid overtime wages

together with costs and such reasonable attorney's fees as my be allowed by the Court, and damages of 5% of the amount of any such unpaid overtime wages for each month following the date of payment during which such underpayments remain unpaid.

52.     Under the Illinois Minimum Wage Law, Silverthorne is subject to a three year statute of limitations.

### VI.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff Stacey I. Miller respectfully requests that the Court enter judgment against Defendants Scott Silverthorne, Silverthorne Chevrolet, Inc. and Silverthorne Auto Group, Inc., jointly and severally, and issue all available relief to her, individually, and to all eligible members of the Rule 23 class and FLSA Class, including, but not limited to, the following:

1. All damages available under the FLSA, including all unpaid overtime wages, all liquidated damages, and payment of all reasonable attorney's fees, costs and expenses;

2. All damages available under the Illinois Minimum Wage Law, see 820 ILCS 105/12(a), including all unpaid overtime wages, treble the amount of unpaid overtime wages together with costs and such reasonable attorney's fees as my be allowed by the Court, and damages of 5% of the amount of any such unpaid overtime wages for each month following the date of payment during which such underpayments remain unpaid.

3. All unpaid and underpaid wages;

4. All reasonable attorney's fees and expenses;

5.  Costs;

6.  Prejudgment interest, if available; and

7.  Any and all other relief just and proper in the premises.

                Respectfully submitted,

                HASSLER KONDRAS MILLER LLP

                By/s/Robert P. Kondras, Jr.
                Robert P. Kondras, Jr.
                Attorney No. 18038-84
                100 Cherry Street
                Terre Haute, IN 47807
                (812) 232-9691
                Facsimile: (812) 234-2881
                kondras@hkmlawfirm.com